We're going to go on to case number four, please, 23-2360, Thad Brockett v. Effingham County, and we're going to get Mr. Meyer in remotely. Let's see, there he is. Am I in, Your Honor? You certainly are. Thank you very much. You're welcome, sir. You may begin whenever you're comfortable. Thank you. May it please the court, I represent the plaintiff Appalachia Thad Brockett. We're asking the court to reverse the district courts granting of a motion to dismiss under Rule 1286 in this First Amendment retaliatory discharge case. My client Thad Brockett was a longtime, in fact, 18-year member of the Effingham County Sheriff's Office, was the operations sergeant at the time he lost that job. He complains specifically that he exercised his First Amendment rights as a private citizen in two ways. First, there was a dispute between the sheriff, Sheriff Monette at that time, and the county board and the county board chairman Jim Neiman about the operations of the Sheriff's Department. In fact, there were allegations by Chairman Neiman that Sheriff Monette was mismanaging public funds, in fact, stealing or converting public funds during his tenure as sheriff. My client's, what we believe to be protected speech, was that he took the sheriff's side in these disputes and publicly did so, and we think that that's one of the reasons that the county board and Chairman Neiman retaliated in terms of causing him to lose his employment. Mr. Meyer, could you tell us, could you tell us why you believe the second set of statements that you've charged are not within your clients job responsibilities? The second set being the reporting of misconduct by subordinate employees? Correct. Okay, I have two reasons for that. The first one is, based upon the case law cited, my client reported that misconduct, which was pretty serious involving criminal offenses, not only internally to the Sheriff's Department and internally to county law enforcement, meaning the state's attorney, but he also reported it to outside law enforcement agencies, including state police, FBI, and others. And perhaps even more importantly, he voiced those concerns to members of the county board. Now, we rely upon the Kristofek case, which is very similar. In that case, as the court knows, it's a Seventh Circuit case. There is a police officer who reported misconduct by a fellow officer, not only internally, but to the FBI. In this court, the Seventh Circuit held that that was sufficient to make it something that was not part of his job duties to make that report to the FBI. The argument has been made by the defense in this case that a police officer has a duty to report crime wherever and whenever it's appropriate for him to do so. And we think that that does not include members of the general public. They're not going to do anything about prosecuting a criminal offense. And we do allege that it was reported to members of the general public. So we don't think that was part of his job duties. We think, on the other hand, that was part of his freedom of speech as a private citizen to go ahead and report those things to outside agencies and to members of the general public. And I hope, Your Honor, that answers your question. But how could he have known about the unlawful conduct were it not in his professional capacity? Well, he certainly found out in conjunction with his professional capacity because the operations sergeant was given supervisory authority over jail personnel. We don't dispute that. That's how he learned about it. He did an investigation of these two individuals. And isn't it a public employee's duty to report criminal conduct to law enforcement when he sees it in employees that he's supervising? Yes. I'm trying to figure out how he could have been speaking as a private citizen. Well, number one, I would say because he was reporting it to the general public as well as to law enforcement. And we think that takes it out of his general duty, job duty, to report it to law enforcement. And secondly, I think we're missing an important point here, and that is that we do not know within the purview of the procedures of Effingham County, Illinois, what law enforcement agencies it was proper or even advisable for him to make a report. I think that a district judge made inferences in that regard, made inferences against the plaintiff, which is improper. If inferences are to be made that a report should go to A, B, C, or D, those inferences should be made in favor of the plaintiff and not against them. And I hope that answers your question, Your back to point one, which is the... Wherever you're comfortable, please. Thank you very much. The first point is that the client, Sergeant Brockett, supported the sheriff in his dispute with Neiman and the County Board. In this regard, when I read the district court's opinion, I was, to use a kind word, surprised to see that the district court made a finding that the activity of which the sheriff was charged, stealing public property, misappropriation of public funds, is not a matter of public concern and therefore not protected under the First Amendment. I hasten to say that if we were to ask, and I know we're not going to do that, any citizen of Effingham County, if they thought those issues were a matter of concern to them, there would be a resounding yes. But more importantly, the district court made that finding without any support from the record and without any legal authority whatsoever. So we think that was error on its face. There was a one-sentence finding that it's a matter of, it's not a matter of public concern, it's personal to the plaintiff. And I at least failed to see how that could be arrived at even by some kind of stretch inference. So we think that on my client was acting in accordance with his rights under the First Amendment and his speech was protected contrary to the district court's view of the situation. There are three other issues that have been raised by the defense in this case and I'll cover them quickly. These issues were not decided by the district court, but they haven't been waived, so I suppose this court could address them. One of them is, or that first one, is the question of color of state law. The easy answer to that is, and I want to back up a second so that the lost his job. You need to watch that clock, Mr. Meyer. That's right, I probably won't need more time anyway. He lost his job because the county board, including Jim Neiman, defunded his position as operations sergeant. That's under color of state law. They're state officials. Now that could not be under color of state law. I don't know and I think that drags all their other conduct into the same basket. Secondly, they have a causation argument which in paragraph 16 and 17 of counts 1 and 2 respectively, we allege that the defendants retaliated against Sergeant Brockett for that speech. That, we think, under the purview of 12b6 is sufficient allegation to allege causation. And lastly, they argue that we haven't alleged anything to bring this case within 1L insofar as the county board is concerned. And once again, I rely upon the ordinance that was passed that defunded Sergeant Brockett's job. That certainly was an act of the county board, which is the chief legislative body of the county. So that argument must also fail. In conclusion, we ask that the case be reversed and remanded for further proceeding. Thank you and I will give you your two minutes for rebuttal. Thank you very much. Mr. Drinkwine. May it please the court and good morning counsel. Chris Drinkwine on behalf of Effingham County and former board chairman Jim Niemann. In considering whether the plaintiff stated a claim based on his speech in support of Sheriff Monette, the district court recognized that under the Garcetti rule plaintiff was required to allege that he spoke as a private citizen and that he did so on a matter of public concern. The district court understood that under Connick v. Myers, whether a statement is on a matter of public concern must be determined by its content, form, and context. The district court also recognized that in the case of the first decisions in Kubiak v. City of Chicago and Bivens v. Trent, even if speech concerns a subject of public interest, it does not constitute speech on a matter of public concern if the expression addresses only the personal effect upon the employee. After reiterating these well-established rules, the district court concluded that plaintiff voicing his opinions in support of the sheriff did not rise to a matter of public concern because it pertained to matters personal to the employee. In his first appellate contention, plaintiff attempts to argue that the district court's analysis was incorrect, but he does not present a Rule 28 compliant argument because he fails to explain why the district court's analysis under Garcetti, Connick, Bivens, and Kubiak was incorrect. He doesn't even cite these cases in his brief, much less explain why he believes the district court misapplied them, and so the defendants respectfully contend that the issue is waived or forfeited. Defendants recognize that forfeiture is a limitation on the parties and not on this Court of Appeals, and if the court deems it necessary to address whether plaintiff plausibly alleged speech on a matter of public concern, the court should conclude that he has not. Plaintiff argues there's no case cited by the district court and no facts alleged to support the district court's conclusion, but the district court cited the Bivens case and the Kubiak case holding that speech concerning a subject of public interest is not of public concern if the expression addresses only the personal effect upon the employee. The conversion of public property and mismanagement of public funds concerns a subject of public interest, but plaintiff is not alleged that he spoke on a matter of public concern because he has alleged that he spoke in in support of his patron who gave him his job and with whom his own interests were aligned, such that plaintiff's speech was advancing a purely private interest. The Bivens case makes clear that it's the point of the public employee's speech that matters. Plaintiff's point was not to expose wrongdoing for the benefit of the public. The point of his speech was to explain that Sheriff Monette did not convert public property or mismanage public funds, and he spoke in support of his own private interest which was aligned with and tethered to Sheriff Monette's interest. But even if this court disagrees with the district court's reasoning on the matter of public concern issue, the court can and should affirm on several alternative grounds supported by the record and argued by the defense. Are all those grounds in your brief? All the grounds in my brief, yes. When I was a young lawyer, Judge Posner used to say, is there anything that you want to add that's not in your brief? Start with that. I don't know that there's anything to add that's not in your brief. Well, I don't know that there is, but I think I can maybe refine some of the alternative grounds and maybe impress upon the court which ones I think are the most important. I'm just wondering if you need to get there at all. I see. But I'll let you do what you want. I'll go ahead and move to the second form of speech with regard to reporting the misconduct of the correctional officers. Isn't the plaintiff's argument here along the lines of, even though I learned it during my employment, as long as I tell somebody else who's not in the chain of custody, the First Amendment protects whatever I do, which cannot possibly be the law. Yes, your honor. I think that is his argument. And his first argument is, as long as I make a statement in support of my politically elected boss, I'm protected by the First Amendment. That can't possibly be the law either. Right. Garcetti and so forth. Right. Concludes that. And I think we heard today, and certainly in his brief, he concedes that his internal reporting of the misconduct of the correctional law officers is pursuant to his duties and therefore not protected speech. He tries to draw this external internal distinction. But that would be impossible, right? I mean, anybody would be protected by the First Amendment is to conduct an internal investigation, then call the newspaper, and now I'm protected by the First Amendment. There's no case that supports that. Right. In the history of jurisprudence, right? I agree, your honor. What matters is whether the report was the result of his official duties as a supervisory official at the Sheriff's Department as the operations sergeant, and he specifically alleges that in paragraph 4. Right. So that's over. Something that's not in my brief that I would like to add, your honor, on the same point, and perhaps overkill, but in Hoskins v. Sheehan, which is 549 F. 3rd 480, is instructive on the point that there can't possibly be this And in that case, a social worker employed by the Cook County Department of Corrections alleged retaliation after she made an internal report that she was assaulted by a corrections officer in the parking lot, and after she reported that assault externally to the Chicago Police Department. This court held that the internal report was official duty speech because she had a duty to report misconduct to her supervisor, but the court held that the external report to the Chicago Police Department was not made pursuant to her official duties because the report was not generated in the normal course of her duties, but rather was similar to a police report filed by citizens every day. So if it was, the court wouldn't have ventured into deciding whether the report was a result of her duties or not if all there had to be was an external report. And as noted in this case, plaintiff has alleged that his reports concerning the corrections officer's misconduct were generated in the normal course of his duties. In fact, they came from his own investigations, two of them, and his responsibilities as the operations specialist required him to report it. So unlike the social worker in Hoskins who made a external report concerning a correctional officer which she had no supervisory authority over, the plaintiff in this case was clearly reporting his own investigation pursuant to his own duties and that speech was not protected by the First Amendment. I guess I would go into the members of the general public argument as well and make two points. Only well-pled facts must be accepted as true on a 12 motion and this is a conclusory threadbare allegation insufficient to satisfy the Twombly-Iqbal plausibility standard. And in any event, and that's because it lacks the when, where, who, or by what means these public reports were made. But moreover, there's no allegation in the complaint that the defendants knew about these purported reports to the general public and statements made to the general public. And the defendants certainly cannot retaliate for speech that they were not aware of. If the panel doesn't have any more questions, I'm through and we would request that you affirm the judgment of the district court. Thank you. Thank you, Mr. Drinkwine. Okay, Mr. Meyer, I will give you the two minutes you requested. I just have one comment to illuminate perhaps how the District Court and Defense Council have been drawing inferences that are improper under the standards of 12b-6. The statement is made that the reporting or and Nieman about misappropriation of funds is personal to the plaintiff. I ask where does that come from except by some kind of inference that is drawn against the plaintiff rather than for the plaintiff. They speculate that perhaps my client had a close relationship with Sheriff Manette and he thought he was going to gain something by perhaps supporting him. That speculation, if it's an inference, it's drawn the wrong direction and this case is replete with that kind of violation of the standards under 12b-6. So that's all I have to say. Thank you. Thank you. I want to thank both Mr. Meyer and Mr. Drinkwine and of course the case will be taken under advisement.